SATURNINO RODRÍGUEZ, Petitioner, *v.* DISTRICT COURT OF HUMACAO, Respondent.

No. 1489. Argued August 27, 1942.—Decided August 28, 1942.

M. *Velázquez Flores* for petitioner. *George A. Malcolm, Attorney General,* and *R. García Cintrón, Assistant Attorney General,* and *Benjamín Ortiz,* former judge of the respondent court, as *amici curiae.*

MR. JUSTICE DE JESÚS delivered the opinion of the court.

During the pendency, in the District Court of Humacao, of a prosecution against Saturnino Rodríguez for the alleged crime of incest, the then judge of said court, Mr. Benjamín Ortiz, on the 12th of the present month rendered in said case an order which in its pertinent part reads as follows:

"Pursuant to the provisions of Act No. 250, approved May 13, 1942, the court transfers this case to the District Court of Caguas. . ."

On the same day the defendant filed, in the District Court of Humacao, a motion praying that the aforesaid order for a change of venue be set aside, on the ground that the said Act No. 250, approved May 13, 1942 (Session Laws, p. 1436) is void: (*a*) because there is a discrepancy between the title and the body of the act; (*b*) because in the body of the act the municipal district of Comerío is annexed to the District Court of Caguas, whereas in the title no mention is made of that municipal district; and (*c*) because in the said act no appropriation is made for the salaries of the officers of the District Court of Caguas.

On the said day, August 12, the same judge denied the motion of the defendant by the following order:

"On reading the motion filed by the defendant, praying that the order for the transfer of this case to the District Court of Caguas be set aside, the court hereby denies the same, as it thinks that the District Court of Caguas has been validly created by law; that the compensation is not an essential part of the existence of the offices; and that the District Court of Caguas actually and legally exists despite the fact that it has no officers (*incumbentes*) at the present time. (*Ex parte Stratman*, 39 Cal. 517; 22 R.C.L. 375.) Let notice hereof be served. Humacao, Puerto Rico, August 12, 1942. (Sgd.) B. Ortiz, B. Ortiz, District Judge."

Feeling aggrieved by those two orders, Rodríguez presented to this court a petition for mandamus against the District Court of Humacao, represented by its aforesaid judge; but as the latter ceased in the discharge of his office, the petition was amended by substituting as respondent his successor, the Acting Judge, Mr. F. González Fagundo, and petitioner applied in the alternative for a writ of certiorari in the event that this court should deem it improper to grant the writ of mandamus.

██ In view of the fact that mandamus does not lie to review a decision of an inferior tribunal, as we held in *People v. La Costa, Jr., Judge,* 59 P.R.R. 178, and considering that the question sought to be reviewed is at once procedural and jurisdictional, §670 of the Code of Civil Procedure (1933 ed.), and that no appeal can be taken from the orders complained of, §347 of the Code of Criminal Procedure (1935 ed.) the writer of this opinion, in the exercise of his functions as acting judge in vacation, issued a writ of certiorari returnable to the full court on the 27th instant, for which date, the Governor, in view of the urgent character of the case and of the public interest which it involves, had convened this court to a special session in order to consider and determine the present case. On said date it was finally submitted to our consideration.

██ ██ Having stated the above antecedents, we will now proceed to study and decide the controversy.

Section 34 of our Organic Act provides that "No bill, except general appropriation bills, shall be passed containing more that one subject, *which shall be clearly expressed in its title;* but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

If we stop to examine the above-transcribed constitutional provision, we will notice that it requires that the subject of an act must be *clearly expressed* in its title, and that although it makes the exception that if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed, however, it does not make the same exception where, as happens in the present case, the text of the act is clearly in conflict with the wording of the title. The purpose of the title of an act is to apprise the public in general and the legislators in particular of the subject covered by the act, so that the former may oppose its approval if they consider the same to be prejudicial to their interests, and the latter may be in a position to cast their votes aware of the subject legislated upon. The necessity that the title of an act should faithfully reflect the contents of the same is clearly inferred from another subdivision of the said §34, *supra,* which reads thus:

"The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the legislature, *after their titles shall have been publicly read,* immediately before signing; and the fact of signing shall be entered on the journal." (Italics ours.)

In applying the constitutional provision that we are discussing, the U. S. Circuit Court of Appeals for the First

Circuit, in the case of *Martínez* v. *People of Puerto Rico*, 46 F. (2d) 427, 429, which originated in this court, said:

"We do not see how those voting for the act could in any way have been misled by the title."

We should not be understood as holding that the title must contain a minute description of the act. It is sufficient if it expresses in a general way what is the purpose thereof, *Rodríguez* v. *P. R. Ry., L., & P. Co.*, 30 P.R.R. 869, provided, of course, that it does not lead to error. As graphically stated in the case last-above cited, the title must be "a sign post" of what the act contains. See *Posados* v. *Warner, B. & Co.*, 279 U. S. 340, where construing the clause of the Organic Act of the Philippines which declares that "no bill which may be enacted into law shall embrace more than one subject, and that subject shall be expressed in the title of the bill," the Supreme Court of the United States said that the purpose of that constitutional provision "is to prevent the inclusion of incongruous and unrelated matters in the same measure and to guard against inadvertence, stealth, and fraud in legislation. When bills conform to such requirements, their titles serve conveniently to apprise legislators and the public of the subject under consideration."

The above principles having been established, let us see now whether the title of the act in question is subject to the defects alleged by the petition. Its title reads thus:

"An Act to segregate the municipalities of Caguas, Aguas Buenas, *Gurabo, Juncos, San Lorenzo*, and Cidra, from the judicial district of Humacao; to segregate the municipality of Comerío from the judicial district of Bayamón; to create the judicial district of Caguas and the court of the judicial district of Caguas; to· determine its functions, jurisdiction, and officials; to appropriate the funds necessary for the payment of the same and of the installation expenses of said court, and for other purposes." (Italics ours.)

Sections 1, 2, and 3 thereof textually read as follows:

"Section 1.—From and after the date on which this Act takes effect, the district court of Humacao shall continue to exist and operate in the same form as it now exists and operates, except in regard to its territorial jurisdiction which, from and after this Act takes effect, shall include only the municipalities of Humacao, Ceiba, Culebra, Fajardo, Las Piedras, Luquillo, Maunabo, Naguabo, Vieques, Yabucoa, *Gurabo, San Lorenzo,* and *Juncos.*

Section 2.—The judicial district of Caguas is hereby created, with its capital in Caguas, which district shall include the municipalities of Caguas, Aguas Buenas, Cidra, and Comerío; and the district court of the judicial district of Caguas is created, which court shall have its seat in the city of the same name, and shall have territorial jurisdiction over the municipalities included in the judicial district of Caguas, hereby created, to wit: Caguas, Aguas Buenas, Cidra, and Comerío.

"Section 3.—The municipality of Comerío is hereby segregated from the judicial district of Bayamón and is hereby included in the judicial district of Caguas, hereby created." (Italics ours.)

It will be sufficient to juxtapose the title of the act with §§1 and 2 thereof, above transcribed, in order to immediately observe that the former is far from being "a sign post" of the contents of the act, and that on the contrary the title is in open conflict with the contents of both the aforesaid sections.

The title indicates that the purpose of the act is to segregate, from the judicial district of Humacao, the municipal district of Caguas, Aguas Buenas, *Gurabo, Juncos, San Lorenzo,* and Cidra; and from the judicial district of Bayamón, the municipal district of Comerío, it being inferred from the same that with all the municipalities thus segregated, there would be created the judicial district of Caguas, together with the corresponding district court. However, §1 of the act expressly provides that the municipalities of Gurabo, San Lorenzo, and Juncos, which, as may be inferred from the title, are to form part of the judicial district of

Caguas, shall continue to be integral parts of the judicial district of Humacao. And §2, in creating the judicial district of Caguas, expressly provides that said judicial district shall comprise the municipal districts of Caguas, Aguas Buenas, Cidra, and Comerío, without the municipalities of Gurabo, Juncos, and San Lorenzo being included in the same, notwithstanding what is impliedly stated in the title.

The act under discussion, as appears from the text thereof, constitutes a marked departure from the policy established by the Legislative Assembly throughout a period of nearly forty years, as regards the number of municipalities and the population with which the various judicial districts have been formed. A study of the population and number of municipalities which compose each of the eight judicial districts that now exist, as appears from the statistical data set forth in the brief of the Attorney General, will show that the population fluctuates between a maximum of 311,570, corresponding to the judicial district of San Juan, and a minimum of 143,282, corresponding to that of Guayama; that the number of municipalities composing each of them fluctuates between 16, of which the district of Humacao consists, and 6 pertaining to that of San Juan, which latter district comprises the capital city with an urban population of 169,247 inhabitants. In contrast with the above figures, we will observe that the district of Caguas to which Act No. 250 relates, according to the text thereof, consists only of 4 municipalities with a total population of 106,938 inhabitants. However, according to the title of the act, said district should consist of 7 municipalities which would put it on the same level with those of Aguadilla and Guayama, respectively, and a total population of 168,899 inhabitants which is greater than that of the two judicial districts last-above mentioned. In view of the foregoing data, we ask ourselves whether those legislators who, influenced by the contents of the title,

voted in favor of the act, would have done so had they known the text of the same, especially if they stopped to consider whether there was any justification for the considerable expense which for the Treasury represented the creation of a judicial district, consisting of only 4 municipalities—three of them being of slight importance—and a total population of 106,938 inhabitants. Would it be possible to say now, with the support of even the slightest reason, that the title could not have misled those legislators who voted for the act in question? Did that title serve to properly apprise the public of the true subject of the act? Undoubtedly not.

It should be noted that this is not the case of an act containing a subject which is not expressed in the title or of one not containing a subject which is expressed in the title. There is involved a most serious violation of the constitutional provision which may produce deceit, stealth, or fraud, by expressing one thing in the title and stating the contrary in the body of the act. If an act thus worded were declared valid, such declaration would be tantamount to converting into a dead letter the constitutional provision. In our judgment, the statute in controversy violates §34 of our Organic Act, since the subject of the enactment is not clearly expressed in its title, and following the rule upheld in the case of *Posados* v. *Warner, B. & Co., supra,* at page 344, to the effect that courts strictly enforce such provision in those cases which, like the present one, fall within the reasons on which it rests, we must hold that the act in question is unconstitutional.

Regarding the second ground—marked with the letter "(b)"—of the petition,. petitioner is not right, as between the title and the text of the act (§3) there is perfect agreement respecting the municipal district of Comerío.

The conclusion we have reached relieves us from discussing the question as to the lack of an appropriation in the budget for the operation of the District Court of Caguas.

Since Act No. 250 of May 13, 1942, is in our opinion unconstitutional, it follows that the orders complained of, based as they are on a void enactment, are also void, and in so decreeing it is proper to direct the District Court of Humacao to resume jurisdiction of criminal case No. 17,318, prosecuted against the petitioner, Saturnino Rodríguez, and to continue the proceedings therein until the final disposition thereof in accordance with the principles set forth in this opinion.

Mr. Justice Snyder did not participate herein.